THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH CLARK, Appellant.

Third Department, June 4, 1987

**APPEARANCES OF COUNSEL**

*J. Raymond Fisher* for appellant.

*James T. Canfield, District Attorney (Paul D. Clayton* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Defendant's indictment for the crimes of criminal possession of a forged instrument and grand larceny resulted from his participation in the uttering of two forged checks. At the ensuing jury trial, a participant in the crimes, Julie Salisbury, testified that she and her boyfriend, Daniel Weidman, stole a number of checks from Weidman's sister and brother-in-law, and that defendant was involved in a scheme to forge and use two of the checks to purchase building materials at a Curtis Lumber store in Rensselaer County. According to Salisbury, on two separate occasions, defendant telephoned an order in to Curtis Lumber and Salisbury and Weidman then filled out a check in the appropriate amount. The trio picked up the materials and dropped them off at an unidentified spot in West Sand Lake in Rensselaer County, for use by defendant, and defendant paid Weidman for the materials.

Defendant denied any involvement in the forgery scheme and testified that Weidman had paid him $20 in exchange for his help in transporting materials from Curtis Lumber to Weidman's sister's house on two occasions. He claimed that at the time he was unaware that the materials were paid for by check, but that 3 to 4 days later Salisbury telephoned him, informed him that she and Weidman had used forged checks which were about to bounce, thus revealing their crime, and that they were leaving the area as a result. Defendant testified that he immediately went to State Police headquarters in the Town of East Greenbush, Rensselaer County, and informed an investigator there of the forgeries.

Although defendant testified at trial to the substance of his exculpatory statement to the investigator, the investigator was not called as a witness. Defendant requested that the jury be given a missing witness charge to the effect that when a defendant testifies to a conversation with a police officer, the conversation is presumed to be true if the officer is not called to rebut the testimony. County Court denied the request and defendant was found guilty on three of the four counts charged in the indictment. The sole issue raised on the instant appeal is whether County Court's failure to charge as requested constituted reversible error. We now affirm.

The exculpatory statement made by defendant to the investigator was of dubious admissibility, either as hearsay or as a self-serving statement *(see, People v Sapia,* 41 NY2d 160, 167,

*cert denied* 434 US 823; *People v Sease-Bey,* 111 AD2d 195, *lv denied* 66 NY2d 618; *People v Squire,* 54 AD2d 833, 834; 6 Bender's New York Evidence §§ 530-532, at 691-699; Richardson, Evidence §§ 356-360, at 322-325 [Prince 10th ed]). Given the circumstances of the making of the statement, none of the exceptions to the general rule against the admissibility of such utterances were applicable. Defendant had ample time to reflect upon his predicament subsequent to Salisbury's telephone call to him regarding the forged checks. Thus, his statement was not made spontaneously and naturally, under circumstances free from suspicion *(see, People v Sostre,* 70 AD2d 40, 44, *affd* 51 NY2d 958; 6 Bender's New York Evidence §§ 533-533.05, at 700-704; Richardson, Evidence §§ 359-360, at 324-325 [Prince 10th ed]). Nor was it a verbal act and part of the res gestae; the statement did not accompany equivocal conduct which could be interpreted by reference to the content of the statement *(see, ibid.).* Also, after testifying in his defense at trial, defendant was not accused on cross-examination of recently fabricating his story of noninvolvement in the forgery. Accordingly, his prior consistent statement was not admissible to rebut an inference of falsehood *(see, People v Jimenez,* 102 AD2d 439, 444; 6 Bender's New York Evidence § 533.05, at 702-704).

Even if the statement made by defendant to the investigator had been admissible, it was of questionable probative value. Defendant concededly went to State Police headquarters after being told by Salisbury that the forgery scheme was about to be uncovered. At that point, if he had been involved in the crime, defendant had a motive to make a false exculpatory statement to the investigator and there is nothing in the record to suggest, to the contrary, that the statement was either trustworthy or credible *(see, People v Jimenez,* 102 AD2d 439, 444, *supra; People v Sostre,* 70 AD2d 40, 46, *supra).*

Given all of the foregoing, defendant was not entitled to a missing witness charge as a result of the People's failure to call the investigator as a witness to testify to the content of the statement. Such a charge may be given only where it is shown that a party failed to call a witness under his control who was in a position to give *material* evidence, relevant to a sharply contested factual issue regarding the actual criminal transaction *(see, People v Williams,* 96 AD2d 972, 973-974, *revd on other grounds* 62 NY2d 765; *People v Samuels,* 59 AD2d 574, 575; *People v Douglas,* 54 AD2d 515, 516-517). Not only was the testimony sought to be elicited from the investi-

gator here of slight probative value, it was also cumulative to testimony given by defendant *(see, supra)*. Moreover, it was collateral to the issue of guilt or innocence *(supra)*, and defendant sought its admission only for the purpose of bolstering his credibility regarding his noninvolvement in the crimes charged.

MAIN, J. P., CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment affirmed.