THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAUL A. MICKELSEN, Defendant-Appellant.

Fourth District   No. 4—92—0953

Opinion filed July 8, 1993.

William A. Yoder, of Ostling, Ensign, Barry & Glenn, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On October 18, 1992, defendant Paul A. Mickelsen was issued traffic citations for, among other things, driving while under the influence of alcohol (DUI) and driving with a blood-alcohol concentration of 0.10 or more in violation of sections 11—501(a)(2) and 11—501(a)(1), respectively, of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1991, ch. 95½, pars. 11—501(a)(2), (a)(1)). Subsequently, his driver's license was summarily suspended pursuant to section 11—501.1 of the Vehicle Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1). On November 4, 1992, following a hearing, the circuit court of McLean County entered an order denying defendant's petition to rescind the statutory summary suspension of his driver's license. The court's order was entered upon the State's motion for judgment at the close of defendant's evidence. Defendant appeals, contending the court erred in entering a "directed verdict" at the close of his evidence because he established a *prima facie* case that the breathalyzer test result was invalidated when he coughed during the 20-minute observation period, which evidence the State failed to rebut. For reasons we will discuss, we affirm.

At the start of the hearing on defendant's petition to rescind, defendant's counsel stated they were proceeding on only one of the grounds for rescission set forth in the petition, *i.e.*, defendant had consented to the requested test but that the test sample did not indicate a blood-alcohol concentration of 0.10 or more. More specifically, defense counsel stated that the "officer failed to follow the correct procedure in administering the breath test." The State noted it was ready to proceed on that issue.

Defendant's first witness was Officer Donald Newton, a police officer for the City of Bloomington, who testified as follows: (1) he was present when defendant was arrested for DUI and he subsequently transported defendant to the police station; (2) at the police station, he brought defendant into the booking room and started booking defendant at approximately 12:40 a.m.; (3) the booking procedure entails "[f]illing out a docket, a form that has name, address, basic identifiers like that, inventory [*sic*] personal property, determining any medical problems that may exist"; (4) the booking procedure takes approximately 5 to 10 minutes; (5) after booking defendant at approximately 12:53 a.m., he issued defendant a traffic citation for DUI; (6) he then read defendant the "Warning to Motorists" and asked defendant to submit to a breathalyzer test, to which defendant consented; (7) he observed defendant for at least 20 minutes prior to administering the breathalyzer test, which began when he started the booking proce-

dure; and (8) he admitted that during part of the 20-minute observation period he was filling out traffic citation forms and booking forms.

Officer Newton further testified that (1) during the 20-minute observation period he usually observes defendants to "see if there's anything in their mouth, to make sure they don't eat or drink or smoke anything, swallow anything, belch, hiccup, or vomit"; (2) the observation period would have to start over again if a defendant had coughed during that time; (3) coughing was a factor that would invalidate the breathalyzer test; and (4) he was not sure but he believed the windows were open in the booking room during some of the time defendant was at the police station.

On cross-examination, Officer Newton testified, as follows: (1) from 12:40 a.m. until 1:10 a.m. (about the time he administered the breathalyzer test), he remained in the presence of defendant; (2) during the booking process defendant sat across a desk from him, approximately three feet away; (3) during the observation period he observed defendant for "belching, coughing, regurgitating [and] drinking"; (4) he agreed that "at no point until [defendant] had submitted to the test, did [defendant] do any of this smoking, belch[ing] or vomit[ing], regurgit[ating] or drink[ing]."

Defendant testified on his behalf as follows: (1) he described the booking room at the police station at the time he was administered the breathalyzer test as containing a desk with a chair on either side, and windows next to the desk going to the outside with the top windows open; (2) when he first arrived in the booking room, booking procedures were initiated and he sat in a chair with his back to open windows while Officer Newton filled out forms; (3) he was cold, the temperature was in the thirties and he asked Officer Newton for a glass of water to suppress a cough; (4) Officer Newton refused to give him water; and (5) within 15 minutes before taking the breathalyzer test, while Officer Newton was filling out forms, he "coughed just trying to settle it."

On cross-examination, defendant further testified, as follows: (1) Officer Newton was sitting at the desk across from him when he coughed; (2) he did not look at the clock when he coughed; and (3) he estimated that he coughed within five minutes before taking the breathalyzer test. At the close of defendant's evidence the State moved for a "directed verdict." The court noted that section 510.60(a) of title 77 of the Illinois Administrative Code (77 Ill. Adm. Code §510.60(a) (1991)) did not list coughing as among the factors that would invalidate breathalyzer test results. Those factors included "ingest[ion] of alcohol, food, drink, regurgit[ation], vomit[ing] or smok-

[ing]." The court rejected defendant's argument that, here, his coughing would have invalidated the breathalyzer test result. The court granted the State's motion for a "directed finding."

Initially, we note that defendant characterizes the court's order here as a "directed verdict" and asserts that the standard for directed verdicts set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, should be utilized. Applying *Pedrick*, defendant maintains the State's motion for a "directed verdict" should have been denied, when, viewing the evidence in a light most favorable to him, a contrary verdict could stand.

However, the instant case was decided by the court, not a jury; therefore, the evidence should not be viewed under the *Pedrick* standard. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43, 44-45.) Instead, section 2—1110 of the Code of Civil Procedure (Code) governs and provides as follows:

> "Motion in non-jury case to find for defendant at close of plaintiff's evidence. In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered. If the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, in which event the motion is waived." Ill. Rev. Stat. 1991, ch. 110, par. 2—1110.

■ Under section 2—1110 of the Code, the trial court is not to view the evidence in a light most favorable to the opposing party. Furthermore, the reviewing court should not reverse the trial court's decision to allow the motion for judgment under section 2—1110 of the Code unless it is contrary to the manifest weight of the evidence. (*Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 45.) The *Kokinis* opinion set forth a complicated procedure for applying section 2—1110 of the Code, which began with a determination as to whether the plaintiff had made a *prima facie* case. (*Kokinis*, 81 Ill. 2d at 154, 407 N.E.2d at 45.) However, most recently in an opinion concerning a proceeding before the Attorney Registration and Disciplinary Commission, by Justice Thomas J. Moran, author of *Kokinis*, section 2—1110 of the Code was held to apply to a hearing before the body when a request for a finding at the close of the petitioner's case was made by the respondent. Justice Moran described the operation of the section in these words:

"The Hearing Board's decision to allow Doyle's motion for directed finding should not be reversed by this court unless it is contrary to the manifest weight of the evidence. (*Kokinis*, 81 Ill. 2d at 154.) For the reasons set forth earlier in this opinion, we find the Hearing Board's decision was not contrary to the manifest weight of the evidence." *In re Doyle* (1991), 144 Ill. 2d 451, 470, 581 N.E.2d 669, 677.

Defendant here maintains that his allegedly unrebutted testimony that he coughed during the mandatory observation period preceding the administration of the breathalyzer test, together with Officer Newton's testimony that coughing would require the observation period to have to begin again, established a *prima facie* case that the test result was invalid. Consequently, relying on *People v. Orth* (1988), 124 Ill. 2d 326, 530 N.E.2d 210, defendant contends that the burden of proof shifted to the State to present evidence in rebuttal to support the statutory summary suspension of his driver's license. Absent evidence by the State in rebuttal, defendant claims the court's "directed verdict" in favor of the State was against the manifest weight of the evidence.

Defendant relies on *People v. Bertsch* (1989), 183 Ill. App. 3d 23, 538 N.E.2d 1306, where the appellate court affirmed the circuit court's order rescinding the summary suspension of that defendant's driver's license. There, the evidence indicated that the arresting officer testified that "belching" during the 20-minute observation period preceding the administration of a breathalyzer test would skew the results of the test. The officer testified that during the observation period he did not observe the defendant ingest alcohol or food, drink, regurgitate, vomit, smoke, or belch. The officer also stated he had been writing the defendant's traffic citations during the observation period. The defendant testified that during the 20-minute period he "belched" twice and that a "phlegm-like substance went up into his mouth and was swallowed." *Bertsch*, 183 Ill. App. 3d at 25, 538 N.E.2d at 1307.

The *Bertsch* court noted that section 510.60(a) of title 77 of the Illinois Administrative Code (77 Ill. Adm. Code §510.60(a) (1985)) did not list "belching" as a factor which, if occurring within the observation period, would render the results inadmissible. Nevertheless, *Bertsch* concluded that based on the officer's testimony that "belching" within the 20-minute observation period would skew the test results, the trial court could have found that if "belching" had occurred during that period the test was invalid. The *Bertsch* court also noted that, there, the trial court, as the trier of fact, had to weigh the

credibility of the witnesses and could have believed the defendant's version of the events which occurred during the 20-minute observation period.

Notably, in *Bertsch*, the appellate court upheld the factual determination made by the trier of fact. Here, defendant is asking us to overturn the decision of the trier of fact.

■ Here, no evidence was presented as to the degree of defendant's cough and—unlike in *Bertsch*—no evidence was presented that any fluid was regurgitated with the cough. As the trial court pointed out, coughing is not a factor which invalidates a breath test by the terms of section 510.60(a) of title 77 of the Illinois Administrative Code. The court also noted that many coughs can be quite minor, amounting to not much more than a throat clearing. While the police officer may think that all coughs invalidate a test, we do not agree. We hold the evidence presented was insufficient to create a *prima facie* case. Furthermore, even if we conclude, *arguendo*, that a *prima facie* case was established, the court could have concluded that as Officer Newton was close to defendant while waiting to test him, he would have heard if defendant had coughed in any substantial way and would have stopped the test if that occurred. Thus, considering all of the evidence and the opportunity of the judge to view the situation, a determination that the test was not skewed would not be contrary to the manifest weight of the evidence.

■ As an alternative ground for affirming the court's order, the State contends that defendant waived this issue for consideration by the trial court because he failed to specifically allege as grounds for rescission in his petition that the breathalyzer test result was unreliable either because he coughed during the observation period or because he was improperly supervised and observed for 20 minutes prior to the test. The State refers to this court's decision in *People v. Buerkett* (1990), 201 Ill. App. 3d 140, 559 N.E.2d 271, which reversed the trial court's order rescinding the defendant's summary suspension of his driver's license, in part, because the defendant's request for rescission failed to specifically allege the ground upon which rescission was ultimately granted. There, defendant neither testified regarding the ground upon which rescission was granted, nor did he allege such a ground in the petition.

Although defendant here did not specifically assert in the petition that the result of the breathalyzer test was invalidated by coughing, the petition did assert that he "submitted to the requested test or tests but the test sample of [his] blood[-]alcohol concentration did not indicate a blood[-]alcohol concentration of 0.10 or more." Moreover,

prior to the hearing defense counsel stated that the only issue at the hearing was whether the "officer failed to follow the correct procedure in administering the breath test." At that time the State noted it was ready to proceed on that issue.

Unlike *Buerkett*, the issue of whether defendant's alleged cough invalidated the test result was, from the beginning of the hearing, clearly in focus and understood by the court and the attorneys. Accordingly, we conclude that the issue of whether defendant's cough invalidated the breathalyzer test was not waived and was properly considered by the trial court.

For the reasons stated above, we affirm the order of the circuit court.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.